CARMELO RAMOS, demandante y apelado, *v.* RAMÓN LLOVERAS SOLER, demandado y apelante.

No. 3956.—*Visto:* Febrero 8, 1927. *Resuelto:* Abril 29, 1927.

"VENUE"—CAMBIO DEL *Venue* O LUGAR DEL JUICIO—RESOLUCIÓN DE LA SOLICITUD —MOCIÓN FUNDADA EN QUE SE RESIDE EN OTRO DISTRITO—RESOLUCIÓN ANTES DE LA VISTA O DE SENTENCIA.—Una moción de traslado fundada en que se reside en otro distrito, no habiendo indicación alguna de que sea claramente frívola o evidentemente dilatoria, debe ser resuelta antes de procederse a la vista del caso y de dictarse sentencia.

Sentencia de *Charles E. Foote*, J. (San Juan), declarando con lugar demanda sobre daños y perjuicios, con costas. *Revocada y devuelto el caso.*

*Carmelo Honoré y Juan B. Soto*, abogados del apelante; *J. H. Brown, C. Ruiz Nazario y G. E. González*, abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La demanda en este caso fué radicada con fecha 23 de octubre de 1923. El día 8 de noviembre, el demandado radicó una moción de traslado fundándose en que residía en otro distrito. Dicha moción venía acompañada de dos declaraciones juradas, y no hay indicación alguna de que fuera claramente frívola o evidentemente dilatoria, ni de que se hubiera presentado con el único fin de dilatar los procedimientos.

En marzo 18, 1925, se anotó la rebeldía del demandado, celebrándose el juicio el día 24 de agosto, durante el cual el demandante introdujo su prueba, y en septiembre 10 se dictó sentencia a su favor por la cantidad de $5,000, más las costas, la que fué registrada con fecha 12 de septiembre. La exposición del caso aprobada por el juez sentenciador dice que el demandado compareció oportunamente mediante moción de traslado debidamente jurada y acompañada de un *affidavit* de méritos; que dicha moción nunca fué discutida ni resuelta en forma alguna; y que se celebró el juicio, previo señalamiento en calendario especial, sin notificación al demandado y sin su comparecencia.

El tercer fundamento de la apelación es que la corte cometió error al dictar sentencia en rebeldía, sin haber resuelto primeramente la moción de traslado, y el apelado nos cita el caso de *Busó* v. *Borinquen Sugar Co.*, 19 D.P.R. 357 como que es terminante en cuanto a este extremo.

La opinión en el caso de *Busó*, en tanto en cuanto no discute la teoría de renuncia y de sumisión a la jurisdicción de la corte en que fué entablada la acción, parece fundarse en el artículo 13 del Código Civil, reforzado hasta cierto punto

por un *dictum* contenido en el caso de *Tórres* v. *Tórres,* 16 D.P.R. 352.

La moción en el caso de *Tórres* fué radicada al tiempo de presentarse una excepción previa a la demanda, y no se fundaba en el hecho de residirse en otro distrito, sino en la conveniencia de los testigos. La cuestión así presentada no fué levantada, ni podía serlo, como una cuestión de derecho, de acuerdo con las disposiciones del artículo 82 del Código de Enjuiciamiento Civil, sino que fué necesariamente dirigida a la sana discreción de la corte, de conformidad con el inciso 3 del artículo 83. Lo que la corte resolvió, en lo pertinente a cualquier cuestión aquí envuelta, fué lo siguiente:

"Una moción en donde se pide el traslado de un pleito de un distrito a otro, para mayor conveniencia de los testigos, no plantea la cuestión de si el tribunal en donde está pendiente el pleito, es o no el competente para conocer de éste."

"La presentación de una solicitud pidiendo el cambio de distrito para la celebración del juicio, por conveniencia de los testigos, al mismo tiempo que se excepciona la demanda, es prematura porque, no habiéndose contestado la demanda, no se ha planteado ninguna cuestión de hecho, y por lo tanto carece el tribunal de base para poder ejercitar su facultad discrecional."

"Un demandado tiene derecho a pedir el traslado de una causa a otro distrito, y el tribunal, el deber de decretarlo, cuando el tribunal competente para el conocimiento del caso es aquél al cuál se pide el traslado, pero en los casos en que el traslado se funda en la conveniencia de los testigos, entonces corresponde a la facultad discrecional del tribunal el decretarlo o no."

En el cuerpo de la opinión, y como prefacio al *dictum* a que se dió énfasis en el caso de *Busó,* la corte se tomó el cuidado de decir lo siguiente:

"Convenimos con los apelados en que la cuestión de si los demandados residen o deben ser demandados en otro distrito no ha sido debidamente presentada, limitándose tanto la moción como la declaración jurada, a la supuesta conveniencia de los testigos."

En el caso de *Baker, Carver & Morell* v. *Healy & Siebert,* 31 D.P.R. 556, después de citarse extensamente del caso de

*Smith* v. *Smith,* 88 Cal. 575 y del de *Bank* v. *City of Eureka.*
97 Cal. 135, y después de hacer distinción de un caso de Montana, esta corte dijo:

"También es verdad que en California algunas de las decisiones, lo mismo que varias de las nuestras, como por ejemplo, la del caso de *Agenjo* v. *Santiago,* 25 D.P.R. 467, citado por la apelada, no están en completa armonía con el claro precepto de las disposiciones del código y la interpretación liberal de las mismas sugeridas por las citas hechas de las opiniones en el caso de *Smith* v. *Smith* y de *Bank* v. *City of Eureka, supra.*

"Por otra parte, en el caso de *State Ex rel. Allen* v. *Superior Court* 9 Washington 668, encontramos lo siguiente:

"Al determinar respecto a la suficiencia del *affidavit* de méritos debe tenerse en consideración el objeto para el cual fué presentado. De acuerdo con nuestro estatuto un residente de cualquier condado tiene derecho, como cuestión legal, a ser demandado en el condado en el cual él o algunos de sus codemandados reside, pero con el fin de evitar que sentencias dictadas de buena fe queden sujetas a ataque colateral probándose después de ser definitivas que resultaba que ninguno de los demandados eran residentes del condado en el cual dichas sentencias se dictaron, la legislatura ha prescrito sabiamente que a pesar de este derecho absoluto por parte de un demandado a que se le demande en el condado de su residencia, este derecho no le servirá a él de tal modo que prive a la corte de otro condado en el cual se ha establecido una acción de jurisdicción, a menos que él comparezca y levante la cuestión de cuál es el debido condado según dispone el estatuto. Se verá que el derecho a que el caso sea juzgado en el condado de su residencia es absoluto, y está sujeto únicamente a ciertas excepciones. Las cortes, por tanto, están en el deber de ver que estos derechos sean preservados y que las excepciones no sean interpretadas de tal modo que destruyan tales derechos por razón de cualquier ligero error técnico por parte del que pretende negar la excepción. La retención de jurisdicción por la corte que no sea la del condado de la residencia de la parte es en cierto modo ilegal, aún cuando no se haga ninguna moción para el traslado al debido condado, y sólo ha sido sancionado por la legislatura debido a las necesidades del caso como arriba se sugiere. Se infiere, pues, que los procedimientos por los cuales el derecho a trasladar se convierte en absoluto, y se niega esta excepción deben ser interpretados con la mayor liberalidad y si resulta de ellos, que existe la intención por parte del demandado de valerse de los privilegios

del estatuto con el fin de negar la excepción contenida en el que autoriza a la corte a sostener la jurisdicción, debe declararse suficiente aún cuando sólo haya habido un cumplimiento substancial y no técnico con las prescripciones del estatuto.

"Sabemos que las decisiones en el Estado de California y quizá en alguno de los otros Estados, parecen haberse basado en una teoría diferente, pero en nuestra opinión estas cortes han pasado por alto el hecho de que la excepción por la cual a la corte donde se ha establecido la acción se le permite retener jurisdicción es una necesidad, y sólo se puso en vigor para hacer efectivo el derecho absoluto del traslado al condado de la residencia en tanto era necesario para proteger la validez de las sentencias dictadas cuando no se había presentado ninguna moción para el traslado. De acuerdo con la interpretación liberal de este estatuto, que creemos debe recibir, el *affidavit* de mérito en el caso de autos era suficiente.' "

Interpretando los artículos 81 al 83, inclusive, de nuestro Código de Enjuiciamiento Civil a la luz de la jurisprudencia de Washington y California citada en la opinión, esta corte entonces resolvió, según lo declara en el sílabo, que:

". . . Los estatutos reparadores deben ser liberalmente interpretados en favor del remedio y las reglas de procedimientos son reparadoras por su naturaleza."

Véase además el caso de *Font* v. *Castro,* 33 D.P.R. 784.

Los casos de *Font* v. *Castro* y *Baker, Carvell & Merrell* v. *Healy & Siebert* no pueden distinguirse del presente por el mero hecho de que la suficiencia de un *affidavit* de méritos no esté envuelta en este caso. La conclusión a que se llegó en dichos casos se basa de lleno en la teoría general de que los estatutos reparadores deben ser liberalmente interpretados, y que los artículos 81, 82 y 83 de nuestro Código de Enjuiciamiento Civil son reparadores por su naturaleza y carácter. El *ratio desidendi* no es más aplicable a la cuestión de lo que significa un *affidavit* de méritos que a la cuestión de lo que la Legislatura intentó exigir a un demandado con relación al tiempo de presentar su solicitud.

Desde luego que no nos confrontamos aquí con elemento

alguno de renuncia o sumisión implícita, como en los casos de *Busó* v. *Borinquen Sugar Co., supra, Ortiz* v. *Gómez,* 21 D.P.R. 507; y *Aponte* v. *Atlas Commercial Co. et al.,* 27 D.P.R. 245.

En el caso de *Pearkes* v. *Freer,* 9 Cal. 642, resuelto en el año 1858, la Corte Suprema de California, refiriéndose a una moción de traslado, y después de discutir los casos anteriores, dijo:

"Se desprende que tal moción basada en fundamentos que aparecen de la demanda debe hacerse antes o al tiempo de radicar la excepción previa. Radicando una excepción previa y consintiendo a que se señale el caso para ser visto en determinado día, el demandado renuncia a su derecho de solicitar el traslado."

Unos sesenta años después, la Corte de Apelaciones de California citó este caso en el de *Lundy* v. *Lettunich,* 195 Pac. 451, en apoyo de la teoría de que:

"La moción debe hacerse en la primera oportunidad."

El caso de *Cook* v. *Pendergast,* 61 Cal. 72, citado con aprobación en el de *Torres et al.* v. *Torres et al., supra,* y citado frecuentemente en otros casos más, se dice que:

"Un demandado que excepciona la demanda, sin contestarla, debe solicitar el traslado (si lo basa en el fundamento de que dicha demanda no se ha radicado en el distrito correspondiente) antes o al tiempo de excepcionar la misma.

En el tomo 1 de *Sutherland on Code Pleading, Practice and forms,* página 594, hallamos lo siguiente:

"Una moción solicitando el traslado de un pleito debe hacerse lo antes posible, y la misma se radica demasiado tarde cuando se presenta después de solicitarse la suspensión de cualquier cuestión pendiente ante la corte."

Posteriormente, en ese mismo párrafo se cita el caso de *Cook* v. *Pendergast, supra,* como autoridad para decir lo siguiente:

"Tan sólo en casos en que se solicita el traslado fundado en que

el distrito designado en la demanda no es el correspondiente, es que la moción de traslado debe preceder o acompañar la contestación o la excepción previa. La moción puede ser hecha por el demandado por cualquier otro fundamento de ley, sin ir acompañada del *affidavit* y requerimiento (demand), dentro de un tiempo rasonable después de haber comparecido. No obstante, tales mociones, por ser de carácter dilatorio, deben ser tramitadas con diligencia.''

Esta misma afirmación puede hallarse en *Estee's Pleadings*, tomo 1, página 47, párrafo 57. Entre los casos citados en dicho párrafo puede hacerse mención de paso del caso de *Tooms* v. *Randall*, 3 Cal. 438, que es una decisión antigua, anterior al caso de *Pearkes* v. *Freer, supra*, la cual sienta la teoría y la práctica existentes en California con anterioridad a la aprobación del Código de Enjuiciamiento Civil que fué más tarde adoptado por Montana, Idaho y Puerto Rico, y la cual constituye la clave del espíritu y significado de dicho código.

Pero se ha llamado nuestra atención al párrafo 31 del capítulo que trata sobre Traslados, en el tomo 25 de *California Jurisprudence*, página 896, del cual copiamos lo que sigue:

''El requerimiento y la moción de traslado del juicio para el distrito correspondiente deben hacerse por el demandado 'al tiempo de presentar la contestación o la excepción previa.' Si lo hace antes, sería demasiado prematuro, y si lo hace después de contestar o excepcionar, sería demasiado tarde.''

Tan sólo se cita un caso en apoyo de la teoría de que la moción y el requerimiento, si se presentan antes del tiempo especificado, ''son demasiado prematuros.'' Refiriéndonos ahora a la única autoridad en que se hace hincapié, hallamos que la teoría que acabamos de enunciar se funda claramente en un *obiter dictum* de una opinión *per curiam* publicada en 1884. *Nicholl* v. *Nicholl*, 66 Cal. 36.

En el caso a que hacemos referencia, la moción se fundaba en un *affidavit* de méritos hecho por el demandado, y no iba acompañada de ninguna otra alegación. Posteriormente, el abogado del demandado, al presentar una excepción previa

a la demanda, radicó otra moción acompañada de un *affidavit* de méritos. Evidentemente, el abogado del demandado no tuvo fe en su moción original y en el *affidavit* de méritos y los abandonó, fundándose en la teoría errónea de que el paso que había dado era prematuro o que así podía ser considerado por la corte. No hay indicación alguna de que hubiera algún defecto intrínseco en la primera moción o en el *affidavit* en que ella se basaba, ni razón aparente para que se radicara una nueva moción y un nuevo *affidavit,* a menos que asumamos la probable existencia de la duda a que ya hemos hecho referencia o una superabundancia de cautela de parte del abogado del demandado. Sin embargo, el curso seguido, independientemente de los motivos que hubo para recurrir al mismo, bastó para que la Corte Suprema hiciera la siguiente manifestación superflua:

"El *affidavit* de méritos y la moción de traslado del juicio al distrito correspondiente, que se radicaron antes de haber el demandado contestado o excepcionado la demanda, fueron enteramente sin consecuencias. Para servir de algo, tal *affidavit* y moción deben presentarse cuando el demandado comparece y contesta o excepciona la demanda." (C. C. P. 396.)

"En este caso, sólo podemos considerar la orden dictada resolviendo la moción, la cual se basó en el *affidavit* y requerimiento radicados al tiempo en que el demandado compareció y excepcionó la demanda. Y de ser suficiente el *affidavit* de méritos, debe confirmarse la orden."

La corte entonces procede a considerar la suficiencia del segundo *affidavit* de méritos a que hemos hecho mención últimamente, y el cual sirvió de base a la orden concediendo el traslado; y después de llegar a la conclusión de que el *affidavit* en cuestión era suficiente para sostener la moción de traslado, confirmó la resolución apelada. Evidentemente, si el *affidavit* de méritos que se hizo en apoyo de la segunda moción era suficiente, no había necesidad de considerar la cuestión de si la primera moción y el *affidavit* eran prematuros. Es igualmente claro que la resolución final de la cues-

tión últimamente mencionada no era un requisito indispensable para que se considerara y resolviera la única cuestión necesariamente envuelta.

Fuera de la manifestación hecha en California Jurisprudence, *supra,* el caso de *Nicholl* v. *Nicholl* parece haber sido más o menos inofensivo, si no "enteramente sin consecuencias" como precedente.

Las palabras usadas en la primera manifestación del párrafo citado de 25 *California Jurisprudence, supra,* son las usadas por el artículo 396 del Código de Enjuiciamiento Civil de California, según fué enmendado en 1907. El primer caso que se cita en la nota correspondiente a esta manifestación es el de *Witter* v. *Phelps,* 163, Cal. 655, al que se hace referencia como "que sostiene que un demandado no renuncia al derecho de que se desestime un caso por indebida dilación en el diligenciamiento del emplazamiento, al excepcionar la demanda y solicitar el traslado del juicio." (Nota 18, 25 Cal. Jur. 896.)

La relación de la resolución sobre la cual se ha hecho énfasis con el punto que ahora tenemos bajo nuestra consideración no es muy aparente. No se levantó cuestión alguna respecto a la validez del diligenciamiento del emplazamiento. No hay nada en la opinión que indique que una solicitud de traslado no sea una comparecencia en el caso. No hubo tal cuestión envuelta. De la opinión se desprende que:

". . . . el demandado compareció mediante un aviso de su intención de solicitar el traslado del juicio al distrito de su residencia, o sea, San Mateo, junto con un requerimiento de tal traslado, un *affidavit* de méritos, y una excepción previa."

Lo que la corte dijo fué lo siguiente:

"No estamos de acuerdo con la contención de que al presentar una excepción previa y solicitar el traslado, la demandada renunció al derecho de oponerse a cualquier dilación que hubiera hasta entonces habido. Habiendo sido emplazada, ella estaba obligada a

comparecer, y excepcionar la demanda o contestarla. Su moción de traslado solamente podía presentarse al tiempo de contestar o de excepcionar la demanda. (Código de Enjuiciamiento Civil, artículo 396). Ella estaba haciendo perfecto uso de sus derechos al insistir en el traslado y al presentar su moción para que se desestimara el caso en la corte a la cual fué trasladado. Al hacer tal uso de sus derechos, no debe resolverse que ella hiciera algo que afectara su derecho de oponerse a las dilaciones que ya habían ocurrido.''

Es por sí mismo evidente que no hubo cuestión alguna respecto a la necesidad de radicar una excepción previa o una contestación al. tiempo de solicitar el traslado. Lo que la corte tuvo en mente y quiso decir fué que el requerimiento de un demandado debe hacerse en el momento de contestar o de excepcionar la demanda, o antes. Cualquiera otra interpretación del lenguaje usado equivaldría a hacer flagrante caso omiso de las reglas fundamentales de interpretación y sería por demás injusta para la corte de California.

Otros casos citados sin comentarios en la nota que hemos mencionado últimamente son: *McNeill & Co.* v. *Doe* 163 Cal. 338, 125, Pac. 345; *Smith* v. *Pelton Water Wheel Co.* 151 Cal. 399, 90 Pac. 932, 1135; *Wadleigh* v. *Phelps,* 147 Cal. 541, 82 Pac. 200; *Cock* v. *Pendergast,* 61 Cal. 72; *Mash* v. *Reynolds,* 38 Cal. 560; *Jones* v. *Frost,* 28 Cal. 245; *Pearkes* v. *Freer,* 9 Cal. 642; *Reyes* v. *Sanford,* 5 Cal. 117.

La nota entonces continúa diciendo:

· ''La disposición anterior al 1907 contenía las palabras adicionales 'comparece y' precediendo a 'contesta o excepciona,' y se resolvió, al interpretar esta disposición, que el demandado en realidad no 'comparecía y excepcionaba' hasta que radicaba su excepción, y que era, por tanto, suficiente radicar el aviso sobre la moción de traslado del juicio a la residencia del demandado, el *affidavit* de méritos y el requerimiento al tiempo de radicarse la excepción. *Fletcher* v. *Maginnis,* 136 Cal. 362, 68 Pac. 1015. Debe notarse que el comisionado codificador, al comentar la enmienda de 1907, dice que 'se han omitido las palabras ''comparece y antes de la palabra contesta'' por ser superfluas. Véase *Rowland* v. *Coyne,* 55 Cal.

1, que resuelve que un demandado comparece tan pronto como notifica y radica su excepción previa.''    (25 Cal. Jur. 897.    Nota 18).

Si se interpretan las palabras ''al tiempo de contestar o excepcionar la demanda'' de acuerdo con el espíritu y objeto de la disposición que estamos considerando como que quieren decir ''en el momento o antes de contestar o excepcionar,'' entonces la conclusión a que llegó el comisionado codificador de California es una cuestión de poca monta. Pero las palabras ''comparece y'' contenidas en la disposición anterior eran y son significativas, ya que indican la intención predominante en las mentes de los primeros legisladores—no obstante el desaliño con que fueron expresadas,— a saber, al tiempo de la primera comparecencia de un demandado, ya fuera mediante contestación, excepción previa, o en cualquier otra forma.    Ninguno de los casos citados combate la idea de un límite de tiempo y de una renuncia como el principio fundamental de la restricción estatutoria sobre el derecho del demandado, que de lo contrario es absoluto, a solicitar el traslado del juicio; y la mayoría de las decisiones, en tanto en cuanto se inclinan hacia una u otra dirección, tienden a sostener esa teoría.

La substancia de lo resuelto en el caso de *Rowland* v. *Coyne,* en lo pertinente a la cuestión de la relación posible o conjetural con la manifestación imputádale al comisionado codificador, puede hallarse en el primer párrafo del sílabo, que dice así:

''En una acción contra varios demandados—uno de los cuales no había sido emplazado—Se notificó y radicó una excepción previa que empezaba por decir: 'Y ahora comparecen los demandados, etc.,' que fué firmada por C. P. & S., 'abogados de los demandados': Se resolvió que ésta era una comparecencia a nombre de todos los demandados, de acuerdo con las disposiciones terminantes del código.''    (Código de Enjuiciamiento Civil, párrafo 1014.)    (55 Cal. 1.)

Pero si el caso de *Coyne,* al forzarse la imaginación, pudiera considerarse como autoridad para la cuestión de que un demandado no puede comparecer en una acción antes de

contestar o excepcionar la demanda, o en ninguna otra forma
que por medio de contestación o excepción, entonces, la doc-
trina así enunciada fué repudiada por el caso de *Davenport*
v. *Superior Court,* 191 Pac. 911, donde se dice que una aser-
ción similar, aunque menos radical, hecha por la misma corte
en otro caso anterior, era "sin duda demasiado amplia."

En el caso de *Fletcher* v. *Maginnis,* resuelto en el 1902,
un comisionado de la corte, con quien estuvieron de acuerdo
otros dos, recomendó la revocación de una orden denegando
el traslado del pleito, y así fué resuelto por tres de los jue-
ces del departamento, por la razón expuesta en la opinión
del comisionado.

En dicho caso, el demandado notificó primeramente una
moción, acompañada del requerimiento y el *affidavit,* y más
tarde, una excepción previa.   Posteriormente, radicó conjun-
tamente la excepción previa, el requerimiento y el *affidàvit.*
El apelado insistió en que la notificación de la excepción pre-
via equivalía a una comparecencia, y que, por tanto, la radi-
cación posterior del requerimiento y del *affidavit* era dema-
siado tardía.   La opinión, leída a la luz de los hechos y de
la contención a que se refiere el razonamiento del comisio-
nado, parece llegar a la conclusión, primero, de que un de-
mandado no excepciona la demanda hasta que radica su ex-
cepción, y, segundo, que una comparecencia antes de la ra-
dicación de la contestación o excepción previa no excluye la
radicación de un requerimiento y *affidavit,* notificados an-
teriormente, conjuntamente con tal contestación o excepción
previa.   En lo referente a la tendencia de la decisión de eli-
minar la comparecencia sin más, como un obstáculo para la
radicación posterior del requerimiento y del *affidavit,* ello
pudo haber tenido alguna influencia como factor en la situa-
ción que dió lugar a la omisión de las palabras "comparece
y" de la enmienda de 1907.   Pero no se desprende que los
que redactaron el código tal y como fué originalmente apro-
bado intentaron prohibir la radicación del requerimiento del
*affidavit* de *méritos* antes de la presentación de la contesta-

ción o de la excepción previa.  Decir que un demandado
"no compareció y excepcionó hasta que radicó la excepción
previa" no quiere decir que un demandado no pueda com-
parecer y solicitar el traslado antes de radicar su contesta-
ción.  Manifestar que una comparecencia sin excepcionar o
contestar la demanda no puede impedir una solicitud pos-
terior, no implica que un demandado no pueda solicitar el
traslado del lugar del juicio en el momento de la primera
comparecencia.  El resultado más lógico y el único legí-
timo de la enmienda al Código de California, ya fuera
efectuada por la legislación judicial de 1902 o por la
disposición legislativa de 1907, fué a lo sumo remover una
restricción técnica e innecesaria sobre el derecho en cues-
tión, y no crear y colocar en el camino de todos los deman-
dados no residentes un nuevo obstáculo, sin razón, justifica-
ción o excusa aparente para tal proceder.

En el caso de *Smith* v. *Pelton Water Wheel Co.*, se cita
extensamente y con aprobación de la opinión del caso de
*Cock* v. *Pendergast, supra,* y está enteramente de acuerdo
con el mismo.  Un factor interesante del caso es la actitud
adoptada por el Juez Presidente Sr. Beatty que no parti-
cipó en la decisión del departamento, pero disintió de la or-
den denegando una nueva vista ante la corte en pleno, y,
aparentemente, de la aplicación drástica de la doctrina enun-
ciada en el caso de *Pendergast,* no de la doctrina misma.
Su opinión disidente termina haciendo la siguiente afirma-
ción:

"No puedo mirar con buenos ojos resoluciones técnicas sobre
cuestiones de procedimientos que tienen por resultado castigar a
una de las partes sin oírsele, aunque tales resoluciones sean exi-
gidas imperativamente por las disposiciones de alguna ley.  Creo
que en este caso, la resolución, lejos de ser necesaria, fué errónea."

El caso de *Reyes* v. *Sanford* es otro caso antiguo que
indica el curso general de la opinión judicial sobre la cues-
tión de traslados en el estado de California allá para me-
diados del siglo XIX.  La opinión en dicho caso es un mo-

delo de laconismo, y el pronunciamiento final contiene una sugestión que puede o no ser considerada como una indicación útil a nuestra legislatura local. La corte por voz del Juez Presidente Sr. Murray, dijo:

"El apelante ha señalado varios errores, ninguno de los cuales tiene fundamento. Un examen cuidadoso de los autos demuestra que el caso fué debidamente juzgado por la corte inferior. La cuestión de jurisdicción ha sido ya resuelta por esta corte.

"La corte de distrito es una corte de jurisdicción original general, y el diligenciamiento de sus órdenes es coextensivo con el estado. Se pueden trasladar causas de un distrito o condado a otro, en la forma dispuesta por la ley; pero, según mi entender, esto no se permitiría después que la parte ha comparecido y contestado sobre los méritos de la demanda.

"La apelación se entabló con el propósito de dilatar los procedimientos. Por tanto, se confirma la sentencia, imponiéndosele al apelante el 15% por daños y perjuicios."

Los otros casos anteriormente mencionados y que no hemos discutido en esta opinión no requieren mayor consideración.

El caso de *Powell* v. *Sutre*, 80 Cal. 559, resuelto por una corte dividida, también está citado en *California Jurisprudence* en relación con la siguiente manifestación:

"La regla de que el demandado debe presentar la moción al tiempo de contestar o excepcionar por primera vez ha sido forzada hasta donde parece su límite máximo al resolverse que un demandado está impedido en una corte superior de solicitar con éxito el traslado de un pleito al condado de su residencia después de haber radicado su contestación en la corte inferior, donde se radicó originalmente el caso, aunque la radicación de tal contestación era necesaria para darle jurisdicción a la corte superior, y aunque tal derecho de solicitar el traslado al condado en que reside el demandado no existe en una corte inferior."

De la opinión disidente del Juez Asociado Sr. Works hacemos el siguiente extracto: (Bastardillas nuestras.)

"Si el juez de la corte inferior no tenía jurisdicción, hubiera sido inútil radicar el *affidavit* en dicha corte, ya que no tenía poder

para resolver la cuestión.    El demandado hizo el *affidavit* correspondiente *tan pronto como el caso llegó a una corte que tenía jurisdicción para resolver la cuestión, y antes de realizar acto alguno en dicha corte o de dar algún paso en la misma.    Esto equivalía a proceder con la mayor cautela en el ejercicio de sus derechos que puede razonablemente exigírsele a una persona, de acuerdo con la ley.* Basta decir que 'el derecho de solicitar un traslado es puramente estatutorio, y una persona que desea valerse de ese derecho debe demostrar claramente que está dentro de las disposiciones de la ley sobre la materia,' pero es una cosa enteramente distinta para las cortes interpretar un estatuto, como en ciertos casos, y privar a una de las partes de su derecho, anulando, en tales casos, el estatuto mismo.

"De prevalecer la doctrina sentada en la opinión de la mayoría, todo lo que un demandante tiene que hacer de ahora en adelante, a fin de impedir que un demandado ejerza su derecho de ser juzgado en el condado de su residencia, es radicar su demanda en una corte inferior que no tiene jurisdicción, obligando de ese modo al demandado a ser juzgado ante el juez de tal corte inferior o a radicar una contestación que dé lugar al traslado del caso a la corte superior de dicho condado, y en cualquiera de dichos casos, de prevalecer tal interpretación, se le priva enteramente de ejercer su derecho de solicitar el traslado al condado correspondiente.    A mi juicio, no debe negarse a una persona un derecho claro estatutorio, aún en un 'caso comparativamente trivial,' mediante una interpretación tan estricta de las disposiciones del estatuto.    La ley es la misma en todos los casos, y las cortes no pueden negar el derecho concedido por ella fundándose en que consideran que el caso que tienen a la vista es comparativamente trivial."

El principio fundamental envuelto que se hace tan palpable en la opinión del Juez Asociado Sr. Works, se expresa aún más vigorosa y claramente en la opinión disidente del Juez Presidente Sr. Beatty y del Juez Asociado Sr. Fox, que pasamos a transcribir íntegramente: (Bastardillas nuestras).

"Disentimos.    El caso es trivial en lo que se refiere a la cantidad de dinero envuelta, pero encarna un principio que es *importante que sea resuelto correctamente*.    De acuerdo con el artículo 395 del Código de Enjuiciamiento Civil, es una cuestión de derecho absoluto para el demandado que el juicio se celebre en el distrito de su residencia.    Por sus propios términos, este artículo es imperativo, y tan

claro, que no está sujeto a interpretaciones, bien en cuanto a su significado o en cuanto a la intención que tuvieron en mente los que lo redactaron. Por otra parte, el artículo 396 que se cita en la opinión de la mayoría es una mera disposición de la forma de procedimiento que se debe seguir para obtener el derecho. Estando ese derecho absolutamente establecido por una disposición legislativa, si no se hubiese aprobado procedimiento alguno para su ejercicio, sería el deber de la corte prescribirlo. El artículo 396 ha prescrito un procedimiento para todos los casos corrientes que surgen en el curso de la práctica; pero aquí nos confrontamos con un caso, como a veces ocurre en el curso de los acontecimientos humanos, en el cual la forma de procedimiento provista, si hemos de seguir al pie de la letra lo dispuesto por el estatuto, no está prevista, y entonces tenemos un caso en que hay un derecho sin un remedio. En tal caso, es el deber de la corte, si fuere posible, buscar un remedio. *Examinando el remedio general que ha sido concedido hallamos que la idea predominante en las mentes de los que redactaron el estatuto, fué qué la parte que trata de aprovecharse del derecho garantizádole por el artículo 395, debe presentar su solicitud en el momento en que comparece por primera vez ante la corte que tiene jurisdicción* sobre el caso. Eso fué lo que se hizo en este caso. La contestación fué necesariamente radicada en una corte que no tenía jurisdicción, ni para ver el caso ni para transferirlo a otro condado. Esa corte, según estaba obligada a hacerlo, trasladó el caso a una corte competente dentro del condado, *e inmediatamente que se radicaron los documentos en la corte a la cual se trasladó el pleito,* se presentó la moción de traslado. La moción debió haber sido declarada con lugar.''

No necesitamos por ahora, y sin la ayuda de los abogados, tratar de hacer una distinción entre una comparecencia general y una comparecencia especial, ni establecer fuera de toda duda la proposición de que la radicación de una moción de traslado acompañada de un *affidavit* de méritos válido, sin ir acompañado de ninguna otra alegación, da derecho al demandado, como cuestión de ley, a que se resuelva favorablemente su solicitud. No pretendemos decir que hayamos examinado todos los casos resueltos que tengan alguna relación con el punto que estamos discutiendo. Un punto de partida para una mayor investigación en lo que

se refiere a las decisiones de Montana puede hallarse en el caso de *O'Hanion* v. *Great Northern Ry. Co.,* 245 Pac. 518. Nuestro propósito hasta ahora ha sido demostrar que estaba pendiente una cuestión preliminar en la corte inferior al tiempo de señalarse el caso para juicio y de celebrarse el juicio en ausencia del demandado.

Refiriéndonos nuevamente al tomo 1 de *Sutherland, supra,* página 603, sección 1000, según indica el apelante, el autor, al citar los casos de *Brady* v. *Times Mirror Co.,* 106 Cal. 56 y *Nolan* v. *McDuffic,* 125 Cal. 334, dice:

"Una moción solicitando el traslado de un caso suspende todos los demás procedimientos judiciales en el mismo, así como el poder de la corte para actuar sobre cualquiera otra cuestión hasta tanto se resuelva la moción. Mientras esté pendiente la vista de la moción, y hasta que se haya resuelto la misma, la corte no tiene facultad para oir ni resolver una excepción previa a la demanda, y cualquier resolución dictada sobre esta última es nula. De proceder la moción de traslado, el demandado tiene derecho a que la excepción previa sea resuelta por la corte del distrito al cual deba trasladarse el caso."

Véanse además los casos de *Sucesores de Abarca* v. *Nones et al.,* 30 D.P.R 866, y los casos citados en la nota número 1 de 25 Cal. Jur. 897, párrafo 31, en apoyo del texto al mismo efecto.

Admitiendo, sólo para los fines de la argumentación, que la moción en el presente caso era prematura, y que pudo desestimarse, fundándose en el caso de *Busó* v. *Borinquen Sugar Co., supra,* sin embargo, no se desprende, como asume el apelado, sin tratar de demostrarlo, que la corte inferior estuvo justificada al pasar completamente por alto la solicitud de traslado. Quizás la moción pudo haber sido denegada en cualquier momento antes de dictarse sentencia por abandono o por cualquiera otra causa satisfactoria, si se hubiera levantado una cuestión de esta naturaleza en la corte inferior; pero a falta de una demostración en contrario, estamos obligados a resolver que la solicitud debió haber sido

resuelta antes de procederse a la vista del caso y de dictarse sentencia.

*Debe revocarse la sentencia apelada.*

El Juez Asociado Sr. Wolf disintió y el Juez Asociado Sr. Aldrey está conforme con la sentencia por el último fundamento de la opinión